**GOSIGER MACHINE CO., Appellant, v GLANDER, Appellee.**

Board of Tax Appeals, Department of Taxation of Ohio.

No. 11530.  Decided October 20th, 1947.

Robert H. Hoffman, Columbus, for appellant.
Hon. Hugh S. Jenkins, Attorney General, and Daronne R. Tate, Asst. Atty. General, Columbus, for appellee.

## ENTRY

This matter came on to be heard upon an appeal from a final order of the tax commissioner made under date of March 15, 1946, wherein said tax commissioner assessed for taxation for the year 1944 as current accounts receivable, in the computation of said taxable credits, certain credits amounting to $31,132.63, which the appellant, C. H. Gosiger Machine Company, had with the United States Treasury Department as of January 1, 1944, for post-war refund bonds.

Said matter was heard and submitted on the transcript of the proceedings before the tax commissioner, the evidence and briefs of counsel.

The question for determination by this Board is whether credits established by the secretary of the treasury of the United States to the account of a taxpayer subject to excess profit taxes, which credits are equal to 10% of such excess profit taxes paid by a taxpayer and which are payable in United States bonds only, and which bonds had not been issued on tax lien date, to wit, January 1, 1944, are subject to taxation as current accounts receivable in the state of Ohio.

The secretary of the treasury was authorized to establish the above credits and to issue refund bonds to the taxpayer entitled thereto by Section 780, Federal Code Annotated, Vol. 6, page 177, which reads in part as follows:

"Part III—Post-War Refund of Excess Profits Tax 780. Post-war refund of excess profits tax. —(a) In General. — The Secretary of the Treasury is authorized and directed to establish a credit to the account of each taxpayer subject to the tax imposed under this subchapter (Pars. 710 to 783 of this title), for each taxable year ending after December 31, 1941 (except in the case of a taxable year beginning in 1941 and ending before July 1, 1942), and not beginning after December 31, 1943, of an amount equal to 10 per centum of the tax imposed under this subchapter for each such taxable year. For the purposes of this part (Pars. 780 to 783 of this title) in the case of a taxpayer whose tax is determined under section 710(a)(3), the term 'tax imposed under this subchapter' means the portion of the tentative tax determined under section 710 (a)(3)(B).

"(b) Application of credit to purchase of bonds—Within three months after the payment of the amount of the excess profits tax shown on the return for a taxable year to which subsection (a) applies (or, if such taxable year begins or ends in 1942, within one year after payment of the excess-profits tax shown on the return for such year), if the payment is made before July 1, 1945, there shall be issued to and in the name of the taxpayer bonds of the United States in an aggregate amount equal to 10 per centum of the tax paid in respect of which a credit is provided under subsection (a), and the credit established under subsection (a) for such taxable year is hereby made available for the purchase of such bonds.

"(c) Terms and maturity of bonds.—The bonds provided for in subsection (a) shall be issued under the authority and subject to the provisions of the Second Liberty Bond Act, as amended, and the purposes for which bonds may be issued under such Act are extended to include the purposes for which

bonds are required to be issued under this section. Such bonds shall bear no interest, shall be non-negotiable and shall not be transferable by sale, exchange, assignment, pledge, hypothecations, or otherwise, except to a successor as defined in subsection (g), on or before the date of cessation of hostilities in the present war, but after said date, such bonds shall be negotiable, and may be sold, exchanged, pledged, assigned, hypothecated, or otherwise transferred, without restriction, and shall be redeemable (at the option of the United States) in whole or in part upon three months' notice. Such bonds for any taxable year to which this section applies shall be payable at the option of the owner on or after January 1, 1946, and shall mature on the last day of that calendar year, beginning after the date of cessation of hostilities in the present war, which is shown in the following table to be applicable to such bonds for such year."

In February, 1945, after the above law was enacted, the tax commissioner adopted the following Rule:

"Credits with the United States Treasury Department, which result from the payment of excess profit taxes and for which United States Bonds, as provided by Federal Law (Internal Revenue Code, Section 780-b), have not been issued as of tax listing day, are 'current accounts receivable' within the meaning of §5327 GC, and shall be used by taxpayers in the computation of 'not taxable credits'."

In this Rule the commissioner states that the above credits are current accounts receivable within the meaning of §5327 GC.

Sec. 5327 GC, defines current accounts as items receivable or payable on demand or within one year from the date of inception, however evidenced.

It will be seen by Section 780, Federal Code Annotated, Vol. 6, page 177, supra, that these post-war credits are not payable on demand or payable within one year from date of inception, and by this section these refunding bonds, if and when issued, were non-interest-bearing, non-negotiable, and shall not be transferred by sale, exchange, assignment, pledge, hypothecations, or otherwise, except to a successor and, further, that they shall not be payable at the option of the owner until after January 1, 1946, and shall mature on the last day of that calendar year, beginning after the date of cessation of hostilities of the present war (meaning World War II).

The tax commissioner attempted to classify by Rule these post-war refund credits as current accounts receivable when by a careful reading of Section 780, Federal Code Annotated, Vol. 6, page 177, it will be seen that by no stretch of imagination could these credits be classified as current accounts receivable, because, they are not payable on demand or within one year from the date of inception as current accounts receivable are defined by §5327 GC.

As stated above, these bonds had not been issued as of January 1, 1944. Had they been issued there would have been no question but that they were non-taxable by the state of Ohio.

Justice Murphy in passing on what credit instrumentalities of the Federal government were non-taxable in the case of Smith v Davis, United States Supreme Court Law. Ed. Advance Opinions, Vol. 89, No. 3, page 101, had this to say about the characteristics of such instrumentalities:

"Such instrumentalities in each instance have been characterized by

(1)   Written documents,

(2)   The bearing of interest,

(3)   A binding promise by the United States to pay specified sums at specified dates,

(4)   Specified Congressional authorization, which also pledged the faith and credit of the United States in support of the promise to pay."

In the above case the Court held that an open account against the United States is not within the exemption of all stocks, bonds, treasury notes and other obligations of the United States from state or local taxation, declared by R. S. Sec. 3701, 31 U. S. C. Sec. 742.

The Board is of the opinion that the credits in question meet the characteristics of instrumentalities of the United States government, as defined by the Court in the above case, while they do not bear interest we think this would not be of vital importance.

These credits were payable in bonds only, therefore, to the taxpayer they were the same as bonds whether issued or not on tax lien date.

We think that the tax commissioner attempted to do indirectly what he could not do directly.

The Board, therefore, finds that the tax commissioner erred in taxing these credits as current accounts receivable and his action in taxing same in the matter complained of is hereby reversed.